**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION**

CASE NO.:

**ROSE VOLTAIRE, on behalf of herself
and all other similarly situated,**

      **Plaintiff,**

vs.

**TPUSA, INC., a Foreign Profit Corporation
(d/b/a) TELEPERFORMANCE**

      **Defendant.**
_____/

**COLLECTIVE ACTION COMPLAINT**

Plaintiff, ROSE VOLATAIRE ("Voltaire" or "Plaintiff"), individually and on behalf of all similarly situated individuals, by and through her undersigned attorney, hereby brings this Collective Action Complaint against Defendant, TPUSA, INC, a Foreign Profit Corporation (d/b/a TELEPERFORMANCE) ("TPUSA" or "Defendant"), and alleges as follows:

**INTRODUCTION**

1. This is a Collective Action brought by Plaintiff, on behalf of himself and those similarly situated call center employees who were employed at Defendant's call centers, to recover for Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.

2. Plaintiff, and those similarly situated, were subjected to Defendant's policy and practice of failing to compensate its call center employees for their necessary pre-shift and post-lunch activities, which resulted in the failure to properly compensate them as required under

applicable federal and state laws.

3. Further, Plaintiff, and those similarly situated, worked more than forty (40) hours per workweek without receiving the proper overtime pay for all their overtime hours worked because Defendant failed to properly calculate the overtime pay rate to include non-discretionary bonuses.

4. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiff in Defendant's call center, condemn their employer's non-payment of an employee's necessary pre-shift and post-shift activities. *See* DOL Fact Sheet #64, attached hereto as Exhibit A.

5. Specifically, the DOL stated:

> "hours worked" includes **all time** an employee must be on duty, or **on the employer's premises** or at any other prescribed place of work, **from the beginning of the first principal activity** of the workday to the end of the last principal activity of the workday An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails. *See id*. at 2 (emphasis added). Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq*.

8. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

9. This Court has supplemental jurisdiction over Plaintiffs' breach of contract or

unjust enrichment claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

10. Upon information and belief, Defendant's annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

11. Defendant's employees, including Plaintiff, engage in interstate commerce—including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

12. This Court has personal jurisdiction over Defendant because TPUSA, Inc. is Registered with the Florida Department of Corporations to conduct business within Florida, and they continue to conduct business within the State of Florida.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business within this District, and because a substantial portion of the events that give rise to the claims pled in this Complaint occurred in this District.

**PARTIES**

14. Plaintiff is an individual who currently resides in Broward County, Florida.

15. Plaintiff was employed by Defendant as an hourly Customer Service Representative("CSR") and was hired from on or around October 16, 2017 through February 26, 2020, in Defendant's North Lauderdale, Florida call center.

16. Plaintiff has executed her Consent to Become Party Plaintiff form, which is attached hereto, as Exhibit B.

17. Upon information and belief, TPUSA hires call center employees, such as Plaintiff,

to "be the eyes and ears for our team, fielding customer inquiries and finding innovative ways to respond . . . . [while] [h]andl[ing] and carefully respond[ing] to all inbound and outbound customer inquiries."

18. TPUSA is a foreign profit corporation and is registered with the Florida Department of Corporations.

## GENERAL ALLEGATIONS

19. Plaintiff was employed by Defendant as an hourly CSR from on or around October 16, 2017 through February 26, 2020, in Defendant's North Lauderdale, Florida call center.

20. Plaintiff's primary job duties included, but were not limited to, answering calls from customers, answering customer's questions regarding health insurance copays and benefits, as well as billing questions. Plaintiff also took customer complaint calls and grievances as well as making outgoing calls on behalf of UnitedHealthcare's customers to schedule doctor's appointments.

21. Plaintiff's hourly rate of pay was approximately $12.00 per hour. Additionally, Defendant's pay scheme incorporated the ability for Plaintiff to earn non-discretionary bonuses by meeting set quotas.

22. Throughout Plaintiff's employment with Defendant, she regularly worked at least forty (40) hours per workweek.

23. Plaintiff was regularly required to work a substantial amount of time off-the-clock as part of her job duties as a call center employee.

24. Plaintiff was never compensated for this time worked off-the-clock.

25. 29 C.F.R. § 553.221 provides that:

> Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed

workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending roll call, writing up and completing tickets or reports, and washing and re-racking firehoses.

26. 29 C.F.R. § 790.8 provides that "[a]mong activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."

27. The FLSA subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records. 29 C.F.R. § 516.1.

28. An employer is mandated to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and the total hours worked by each employee each workweek. *See id*. § 516.2.

29. Upon information and belief, Defendant failed to establish, maintain and preserve accurate timesheet and payroll records as required by the FLSA.

30. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687-88 (1946) is controlling. That rule states:

> [w]here the employer's records are inaccurate or inadequate an employee has carried out his burden if he proves that he has in fact performed worked for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.*Id*.

31. The Supreme Court set forth this test to avoid placing a premium on an employer's

failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the Act." *Id.*

### A. Pre-Shift and Post-Lunch Off-the-Clock Work.

32. Plaintiff and all other similarly situated current and former hourly Customer Service Representatives ("CSRs") or held any similar positions were tasked with providing Defendant's clients with customer service by use of Defendant's telephones, Defendant's computers, and the programs accessible from Defendant's computers.

33. Defendant required Plaintiff and all other similarly situated current and former hourly CSRs to arrive at the call center before their scheduled shifts to boot up their computers and launch and log into necessary programs, servers, and applications to ensure they were ready to take their first call at their scheduled shift start. This pre-shift procedure regularly took between ten (10) minutes, to thirty (30) minutes, per shift, or even longer if technical issues arise. Only after this pre-shift procedure was completed were Plaintiff and all other similarly situated current and former hourly CSRs allowed to clock-in to Defendant's timekeeping system at the scheduled start of their shifts.

34. Defendant required Plaintiff and all other similarly situated current and former hourly CSRs to log out of their necessary programs, servers, and applications and logging off their computers before taking their unpaid lunch break period.

35. Defendant required Plaintiff and all other similarly situated current and former hourly CSRs to return to their desks before the scheduled end of their unpaid lunch period because Plaintiff and all other similarly situated current and former hourly CSRs were required undergo the same boot

up procedure they followed at the beginning of their shifts. Plaintiff and all other similarly situated current and former hourly CSRs were required to return to their desks before the scheduled end of their unpaid lunch period to ensure they were ready to take their first call at their scheduled shift start. This boot up procedure post-lunch regularly took between ten (10) minutes, to thirty (30) minutes, or even longer if technical issues arise. Only after this process was completed were Plaintiffs allowed to clock-in to Defendant's timekeeping system and resume working.

36. The pre-shift and post-lunch boot up procedures are integral and indispensable to the performance of Plaintiff and all other similarly situated current and former hourly CSRs' principal job duties.

37. In order to perform their jobs as call center employees assisting Defendant's client via computer and telephone, Plaintiff and all other similarly situated current and former hourly CSRs needed to boot up their computers and launch and log into necessary programs, servers, and applications.

38. The unpaid pre-shift and post-lunch off-the-clock work performed by Plaintiff and all other similarly situated current and former hourly CSRs directly benefits Defendant.

## COLLECTIVE ACTION ALLEGATIONS

39. Plaintiff Rose Voltaire, brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) on her own behalf and on behalf of:

> *All current and former hourly Customer Service Representative or other job titles who performed similar job duties who worked for TPUSA at any time in the last three (3) years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

40. Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

41. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the call center employee described is "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan (namely, Defendant's practices, policy, or plan of not paying their call center for their pre-shift or post-lunch compensable work performed in excess of forty (40) hours per workweek at an overtime premium of at least one and one- half (1.5) times their regular rates of pay and Defendant's practices, policy, or plan of failing to include their non-discretionary incentive pay in calculating their regular rate of pay used to pay overtime compensation); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

42. Plaintiff estimates that the FLSA Collective, including both current and former call center employees over the relevant period, will include several thousand members who would benefit from the issuance of a court-supervised notice of this action and the opportunity to join it. The precise number of collective class members should be readily available from a review of Defendant's personnel, scheduling, time and payroll records, and from input received from the collective class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

43. Plaintiff shares the same interests as the FLSA Collective in that the outcome of this action will determine whether they are entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not

altogether identical, to the factual assessment and legal standards lend themselves to a collective action.

## CAUSES OF ACTION

### COUNT I-VIOLATION OF THE FLSA
### 29 U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES

44. Plaintiff re-alleges and incorporate all previous paragraphs herein and further alleges as follows.

45. At all times relevant to this Action, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

46. Upon information and belief, Defendant's annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

47. Defendant is engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

48. At all times relevant to this Action, Plaintiff was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

49. Plaintiff were either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

50. Defendant's employees, including Plaintiff, engage in interstate commerce—including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

51. The position of Customer Service Representative is not exempt from the FLSA.

52. Defendant's other job titles performing similar Customer Service Representative job duties are not exempt from the FLSA.

53. At all times relevant to this Action, Defendant "suffered or permitted" Plaintiff to work and thus "employed" him within the meaning of the FLSA, 29 U.S.C. § 203(g).

54. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half (1.5) times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. *See* 29 U.S.C. § 207.

55. Upon information and belief, Defendant has corporate policies of not properly paying overtime pay for its hourly workers.

56. Defendant violated the FLSA by suffering or permitting Plaintiff and all other similarly situated current and former hourly CSRs to routinely perform off-the-clock pre-shift and post-lunch work by not allowing its employees to clock-in until after the pre-shift and post-lunch procedures were complete.

57. Defendant violated the FLSA by failing to pay Plaintiffs the federally mandated overtime premiums for Plaintiff and all other similarly situated current and former hourly CSRs' off-the-clock hours worked in excess of forty (40) hours per workweek.

58. Defendant violated the FLSA by failing to include non-discretionary incentive pay in calculating Plaintiff and all other similarly situated current and former hourly CSRs' regular rate of pay used to pay overtime compensation.

59. Defendant's violations of the FLSA were knowing and willful.

60. By failing to compensate its hourly workers at a rate not less than one and one-half (1.5) times their regular rate of pay for all work performed in excess of forty (40) hours in a workweek, Defendant has violated the FLSA, 29 U.S.C. § 201, *et seq.*, including 29 U.S.C. §§

207(a)(1) and 215(a). All similarly situated call former hourly CSRs or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to former hourly call center agents, or other job titles performing the same or similar job duties, who have worked or are working for Defendant in the same or similar position as Plaintiff.

61. None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the Class.

62. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated individuals, requests the following relief:

a. An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b. An Order certifying this action as a class action for the Rule 23 Breach of Contract Nationwide Class (or for the Rule 23 Unjust Enrichment Nationwide Class if no contract is found) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses,

and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under this litigation;

d. An Order designating the Named-Plaintiff to act as the Nationwide Class Representatives on behalf of all similarly situated individuals for both the FLSA and the Rule 23 Breach of Contract or Unjust Enrichment Nationwide Classes;

e. An Order declaring that Defendant willfully violated the FLSA and its attendant regulations as set forth above;

f. An Order declaring that Defendant violated its obligations under the FLSA;

g. An Order granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid overtime pay calculated at the rate of one and one- half (1.5) of Plaintiff's regular rate multiplied by all hours that Plaintiff worked in excess of forty (40) hours per week for the past three (3) years for Plaintiff and for the FLSA Class;

h. An Order awarding liquidated damages to Plaintiff, in an amount equal to the amount of unpaid overtime found owing to Plaintiff under the FLSA;

i. An Order granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid hourly wages and non-discretionary bonuses earned by unpaid, in an amount to be proven at

| | |
|---|---|
| | trial; |
| j. | An Order awarding reasonable attorney fees and costs incurred by Plaintiffs in filing this Action; |
| k. | An Order awarding pre and post-judgment interest to Plaintiffs on these damages; and |
| l. | An Order awarding such further relief as this court deems appropriate. |

## JURY DEMAND

NOW COME Plaintiff, by and through her Attorneys, and hereby demand a trial by jury pursuant to *Rule 38 of the* Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated this 30th day of August, 2021

Respectfully submitted,

*/s/ Noah E. Storch*
Noah E. Storch, Esq.
Florida Bar No.: 0085476
RICHARD CELLER LEGAL, P.A.
10368 W. State Road 84, Suite 103
Davie, FL 33324
Telephone: (866) 344-9243
Facsimile:  (954) 337-2771
E-mail: noah@floridaovertimelawyer.com

*Trial Counsel for Plaintiff*

# EXHIBIT A

**U.S. Department of Labor**
Wage and Hour Division



(Revised July 2008)

# Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA)

This fact sheet provides general information concerning the application of the FLSA to employees working in call centers.

**Characteristics**

A call center is a central customer service operation where agents (often called customer care specialists or customer service representatives) handle telephone calls for their company or on behalf of a client.  Clients may include mail-order catalog houses, telemarketing companies, computer product help desks, banks, financial services and insurance groups, transportation and freight handling firms, hotels, and information technology (IT) companies.

**Coverage**

If the annual dollar volume of a call center's sales or business is $500,000 or more, and the enterprise has at least two employees, all employees of the enterprise are covered by the FLSA on an "enterprise" basis.  An enterprise may consist of one establishment, or it may be made up of multiple establishments.

Additionally, the FLSA also provides an "individual employee" basis of coverage.  If the gross sales or volume of business done does not meet the requisite dollar volume of $500,000 annually, employees may still be covered if they individually engage in interstate commerce, the production of goods for interstate commerce, or in an occupation closely related and directly essential to such production.  Interstate commerce includes such activities as transacting business via interstate telephone calls, the Internet or the U.S. Mail (such as handling insurance claims), ordering or receiving goods from an out-of-state supplier, or handling the accounting or bookkeeping for such activities.

**Requirements**

Covered nonexempt employees are entitled to be paid at least the federal minimum wage as well as overtime at time and one-half their regular rate of pay for all hours worked over 40 in a workweek. (This may not apply to certain executive, administrative, and professional employees, including computer professionals and outside sales, as provided in Regulations 29 CFR 541).

The FLSA requires employers to keep records of wages, hours, and other items, as specified in the recordkeeping regulations.  With respect to an employee subject to both minimum wage and overtime provisions, records must be kept as prescribed by Regulations 29 CFR 516.  Records required for exempt employees differ from those for non-exempt workers.

The FLSA also contains youth employment provisions regulating the employment of minors under the age of 18 in covered work, as well as recordkeeping requirements.  Additional information on the youth employment provisions is available at www.youthrules.dol.gov.

FS 64

**Typical Problems**

Hours Worked:  Covered employees must be paid for all hours worked in a workweek.  In general, "hours worked" includes all time an employee must be on duty, or on the employer's premises or at any other prescribed place of work, from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday.  Also included is any additional time the employee is allowed (i.e., suffered or permitted) to work.  An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails.

Rest and Meal Periods:  Rest periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked.  *Bona fide* meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal.

Recordkeeping:  A daily and weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept.

Overtime:  Earnings may be determined on an hourly, salary, commission, or some other basis, but in all such cases the overtime pay due must be computed on the basis of the regular hourly rate derived from all such earnings.  This is calculated by dividing the total pay (except for certain statutory exclusions) in any workweek by the total number of hours actually worked.  See Regulations 29 CFR 778.

Salaried Employees:  A salary, by itself, does not exempt employees from the minimum wage or from overtime.  Whether employees are exempt from minimum wage and/or overtime depends on their job duties and responsibilities as well as the salary paid.  Sometimes, in call centers, salaried employees do not meet all the requirements specified by the regulations to be considered as exempt.  Regulations 29 CFR 541 contain a discussion of the requirements for several exemptions under the FLSA (i.e., executive, administrative, and professional employees – including computer professionals, and outside sales persons).

**Where to Obtain Additional Information**

**For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).**

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

**U.S. Department of Labor**  **1-866-4-USWAGE**
Frances Perkins Building   TTY: 1-866-487-9243
200 Constitution Avenue, NW   **Contact Us**
Washington, DC 20210

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# BROWARD DIVISION

CASE NO.:

ROSE VOLTAIRE, on behalf of herself
and all other similarly situated,

      Plaintiff,

vs.

TPUSA, INC., a Foreign Profit Corporation
(d/b/a) TELEPERFORMANCE USA

      Defendant.
_____/

## CONSENT TO BECOME PARTY PLAINTIFF

I, Rose Danie Voltaire _____, consent to become the named party plaintiff in the above-styled Lawsuit.

Date: Aug 16, 2021

Signature: _____

Print: Rose Danie Voltaire